TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
JILL S. CASSELMAN (Cal. Bar No. 266085)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-0165
    Facsimile: (213) 894-7819
    Email: Jill.Casselman@usdoj.gov

Attorneys for Plaintiff Martin J. Walsh

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>    Plaintiff,<br><br>    v.<br><br>LOCAL 18, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS,<br><br>    Defendant. | No. 2:22-cv-01740<br><br>**COMPLAINT** |

Plaintiff Martin J. Walsh, Secretary of Labor, alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or Act), 29 U.S.C. §§ 481-483, for a judgment declaring that the June 30, 2021 election of union officers, conducted by Local 18, International Union of Elevator Constructors (Defendant), for the offices of business

1

manager, trustee, warden and executive board members (3) is void and directing the Defendant to conduct a new election for those offices under Plaintiff's supervision, and for other appropriate relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

3. This Court may exercise personal jurisdiction over Defendant because Defendant maintains its principal office in this district.

4. Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

## PARTIES

5. Plaintiff Martin J. Walsh is the duly appointed Secretary of Labor, United States Department of Labor. Plaintiff is authorized to bring this action under section 402(b) of Title IV of the LMRDA, 29 U.S.C. § 482(b).

6. Defendant is, and at all times relevant to this action has been, an unincorporated association maintaining its principal office in the County of Los Angeles, California, within the jurisdiction of this district.

## FACTUAL ALLEGATIONS

7. Defendant is, and at all times relevant to this action has been, a local labor organization engaged in an industry affecting commerce within the meaning of sections 3(i) and (j) and 401(b) of the LMRDA, 29 U.S.C. §§ 402(i) and (j) and 481(b).

8. At all relevant times, Defendant was governed by the Constitution and By-Laws of the International Union of Elevator Constructors, Revised August 2016 (IUEC Constitution).

9. The IUEC Constitution, Article VI, Section 1, provides in part: "Where any grievance or other difficulty arises which appears to require the assistance of the General Office, the General Secretary-Treasurer shall be notified, who shall, in turn, notify the General President."

10. The IUEC Constitution, Article VI, Section 1, further provides in part: "The General President shall take any action necessary to carry out the objectives of the IUEC, to protect the membership of the IUEC and to foster unionism, including, but not limited to, rendering decisions on disputes between local unions or between local unions and members or between members. All such decisions of the General President shall be subject to appeal to the General Executive Board but must be complied with pending appeal."

11. At all relevant times, Defendant was governed by the Constitution and By-Laws, Local #18, Adopted 2008 (Bylaws).

12. Defendant's Bylaws, Article 4, Section 1, provide: "The Officers of this Local shall consist of a President, Vice President, Recording Secretary, Financial Secretary, Treasurer, Three Trustees, Warden, Business Manager and an Executive Board to consist of nine members. These Officers shall be elected in accordance with the provisions of Article 10. All Officers shall be elected for a term of one (1) year unless otherwise specified."

13. Defendant's Bylaws, Article 4, Section 2, provide in part: "The Business Manager and Trustees shall serve for a term of three (3) years."

14. Defendant's Bylaws, Article 4, Section 2, further provide in part: "The Trustees shall be elected in such a manner that the term of one Trustee shall expire at the end of each year. The members of the Executive Board shall serve for a three (3) year term of office not to exceed one term consecutively. Any member may be elected to the board that has not served the previous term. Three (3) members to be elected to the board the first year and three (3) members each year thereafter.. No Business Agent nor any member may hold more than one elected office at the same time."

15. Defendant's Bylaws, Article 10, Section 1, provide: "The nomination of Officers shall be held at one (1) Special Called Meeting those being April. All members in good standing shall have the right to nominate, vote for or otherwise support the candidate of his choice."

3

16. Defendant's Bylaws, Article 10, Section 4, provide: "All Candidates must be present at the nomination meeting unless a candidate has a good and sufficient reason for not being present, such as illness, in which event the candidate shall submit, to the Chair, a written statement acknowledging that, if nominated, He will accept the nomination."

17. Defendant's Bylaws, Article 10, Section 6, provide in part: "It shall be the duty of the elected Trustees of the Local Union to conduct the election. It shall be their duty to safeguard the secrecy and honesty of the election, prepare and count the ballots and announce the results of the election in a signed statement, and declare offices vacant in which there were no nominations."

18. Defendant's Bylaws, Article 10, Section 9, provide in part: "The election of officers shall be by Secret Ballot and vote at the June special called union meeting."

19. Defendant's Bylaws, Article 10, Section 9, further provide in part: "Election results will be read at the June Special Called Meeting."

20. Defendant's Bylaws, Article 10, Section 15, provide: "In cases of an election complaint, the complaining member or candidate shall submit His complaint in writing to the Recording Secretary with seventy-two (72) hours after the election results have been announced and such complaint shall be heard and determined promptly by Local Executive Board. A new election may be ordered only if it is determined that the matter complained of, might reasonably have changed the result of the election."

21. Defendant represents employees at five employers, including Otis Elevators and Mitsubishi Electric, and has approximately 2,409 active members.

22. At all relevant times, Frank Belio was a member in good standing of Defendant.

23. On or about March 17, 2021, Defendant issued a nominations notice to its membership (March 2021 nominations notice).

24. Defendant's March 2021 nominations notice said in part: "A ballot will be prepared and mailed to all eligible members at their last known address on file with the

Union Hall."

25. Defendant's March 2021 nominations notice further said in part: "All other provisions of Article 10 of the Local Constitution and Bylaws, with the exception of Section 1 and section 4, shall apply in their entirety."

26. Defendant's March 2021 nominations notice also said in part: "Article 10 Section 16 election complaint will be amended to extend the time period to file an election complaint from 72 hours until July 10th, 2021. All other provisions of the article of the Local 18 constitution and Bylaws shall apply for the June 2021 election only."

27. On or before May 13, 2021, Defendant scheduled its next election of officers and other elected positions for June 30, 2021 (the 2021 election).

28. The 2021 election included races for the following elected offices:
    a. Defendant's business manager;
    b. Warden;
    c. One (1) trustee; and
    d. Three (3) executive board members.

29. In the 2021 election, Defendant allowed members to run for more than one elected office at the same time.

30. Defendant allowed member Jason Whitton to run for two different elected offices in the 2021 election: executive board member and trustee.

31. The 2021 election was Defendant's regular triennial election of officers for the business manager, trustee and three (3) executive board member positions.

32. The 2021 election was Defendant's regular annual election of the warden position.

33. Defendant conducted the voting for the 2021 election solely by mail ballot.

34. On or about May 13, 2021, Defendant mailed approximately 2,409 ballot packages to members eligible to vote in the 2021 election (first ballot package).

35. The first ballot package for the 2021 election included a secret ballot envelope, a return envelope, a sheet of paper titled, "Instructions for Mail Voting," and a

ballot printed on yellow paper (first, yellow ballot).

36. The first, yellow ballot listed Whitton as a candidate for trustee, but omitted him as a candidate for executive board.

37. On or about May 21, 2021, Defendant mailed approximately 2,409 ballot packages to members eligible to vote in the 2021 election (second, revised ballot package).

38. The second, revised ballot package for the 2021 election included the following:

> e. a secret ballot envelope,
> f. a return envelope marked in part: "REVISED BALLOT,"
> g. a double-sided sheet of paper with a May 19, 2021 letter printed on one side and a document titled, "Instructions for Mail Voting" printed on the other side, and
> h. a ballot printed on lilac paper (second, revised, lilac ballot).

39. The second, revised, lilac ballot for the 2021 election listed Whitton as a candidate for both trustee and executive board member.

40. The May 19, 2021 letter in the second, revised ballot package for the 2021 election said in part:

> Brothers and Sisters,
>
> I am writing this letter to inform you that an error was discovered on the Officer Ballot mailed to you on May 14, 2021.
>
> A Candidate for Executive Board was not included on the yellow ballot.
>
> Please note that this name is now included on the Lilac ballot enclosed. If you have not already cast your ballot, please destroy the yellow ballot and use the Lilac ballot enclosed. Sorry for any confusion this may have caused.
>
> The election committee will carefully sort the yellow ballots out (providing they have already been sent in) and only use the Lilac ballots. All new Lilac ballots must be returned in the correct envelopes marked "Revised Ballot".

Please be sure to follow instructions on reverse side.

41. The document titled, "Instructions for Mail Voting," and included in the second, revised ballot package for the 2021 election said in part:

- Place your marked ballot in the small envelope labeled "SECRET BALLOT" and seal it. Do not write on this envelope. You must use the secret ballot envelope to ensure that ballot secrecy is maintained. Failure to use the secret ballot envelope will result in your ballot being voided when the ballots are counted. If your ballot package does not contain a secret ballot envelope, you may obtain one by contacting the Local Union Office.

- Insert the sealed secret ballot envelope containing your marked ballot into the return pre-addressed envelope to the IUEC Local No. 18 PO Box (**Revised Ballot**) and seal it. Please add your name, signature and International number in the correct spaces on the return ballot envelope.

- Your name on the return ballot envelope will identify you as an eligible voter. Your vote will remain secret because the Secret Ballot Envelope containing your ballot will be separated from the return ballot envelope and mixed with other Secret Ballot Envelopes before it is opened, and the ballot counted.

- Ballot secrecy can only be preserved if you personally mark and mail your ballot. Do not allow anyone else to mark or handle your ballot to see how you vote. Do not give your ballot to anyone else for mailing. Do not hand deliver your ballot to the union office.

- Any eligible member who has not received a ballot in the mail, or any member who spoils a ballot may request a new ballot by contacting the Local Union Office at (626)449-1869. If you request another ballot, only the replacement ballot will be counted.

- Ballots will be retrieved from the P.O. Box on Wednesday June 30, 2021 at 12:00 pm.

42. On or about May 24, 2021, Defendant emailed a message to one or more members, saying in part:

> A Revised ballot has been mailed to all eligible members after an error was discovered in the Executive Board selection.
>
> One candidate has now been added to the selection.
>
> The Revised ballot is <u>Lilac</u> in color. Please discard the Yellow ballot if you have not yet mailed it to the P.O. Box.
>
> The Election Committee apologizes for any inconvenience.
>
> Feel free to call <u>Greg Martin</u> with any Election questions @ [phone number redacted].

43. On or before June 30, 2021, Defendant posted identical language on the "Member Login" portion of its website.

44. At all relevant times, Defendant's members had to have a valid username and password to access the "Member Login" portion of Defendant's website.

45. Defendant conducted the tally for the 2021 election on June 30, 2021.

46. On or before June 30, 2021, Defendant received 326 voted first, yellow ballots.

47. Defendant did not count any of the voted first, yellow ballots for the 2021 election.

48. On or before June 30, 2021, Defendant received 548 voted second, revised, lilac ballots.

49. Defendant did not count 42 of the second, revised, lilac ballots for the 2021 election.

50. At the tally for the 2021 election, Defendant counted a total of 506 ballots, which were all voted on second, revised, lilac ballots.

51. Of the 326 members of Defendant who voted a first, yellow ballot in the 2021 election, 190 also voted a second, revised, lilac ballot in the 2021 election.

52. Of the 326 members of Defendant who voted a first, yellow ballot in the 2021 election, at least 135 did not vote a second, revised, lilac ballot in the 2021 election.

53. Tony Gazzaniga won the 2021 election for business manager by a margin of 18 votes.

54. The following candidates won the 2021 election for the three (3) executive board member positions: Basil Johnson, Jason Whitton and Brett Christensen. The smallest margin was 42 votes (between the winner with the lowest votes and the runner-up with the highest votes) and the largest margin was 115 votes (between the candidates with the highest and lowest vote totals overall).

55. Glenn Bancroft won the 2021 election for trustee by a margin of 11 votes.

56. James Wilson won the 2021 election for warden by a margin of 80 votes.

57. On July 2, 2021, Belio delivered his written protest of the 2021 election to the Recording Secretary of Defendant.

58. Belio's July 2, 2021 protest said in part: "Due to revised ballot issue I requested election committee extend the mail in time frame the same amount of time lost due to ballot error. It was denied by election committee chairman Greg Martin. See text messages[.]"

59. Belio's July 2, 2021 protest further said in part: "Revised ballot issue negatively impacted mail in ballot time frame."

60. By letter dated and emailed July 14, 2021, Defendant's Executive Board Chairman informed Belio in part: "Re: Elections Complaints. Please be advised that you are required to attend the special called meeting on July 17, 2021, at 12:00 p.m."

61. By email dated July 14, 2021, Belio responded to Defendant in part: "I am currently on a pre planned family vacation (iuec local 18 employer calendar) and will not be able to physically be present. Please provide additional option for my participation in this election complaint process."

62. Also on July 14, 2021, Defendant announced the 2021 election results to the membership at an official union meeting.

63. On July 15, 2021, Defendant's Executive Board Member Basil Johnson emailed Belio in part: "Frank, please send clarification of your election complaint and

any statements for Saturday's election complaint meeting. This will allow us to proceed since you are unable to attend."

64. On July 15, 2021, Belio responded to Defendant by email in part: "I offer additional option for my participation. Phone, or online meeting platforms which have been used extensively by IUEC local 18 over the past 15 months or reschedule the meeting to accommodate more participation. Thank you[.]"

65. By email dated July 15, 2021, Defendant's Executive Board Member Johnson responded to Belio: "It is the executive board's responsibility to act on an election complaint in a timely manner as per local 18's C&B. We have used teleconference in the past 15 month's due to state restrictions but those have been lifted so we are no longer handling business in that manner. Please send us an explanation of your complaint as what we have already received is very vague."

66. On July 16, 2021, Belio emailed Defendant in part: "I believe that the omission of the first (Yellow) ballot that required the mailing of a second ballot was rushed and poorly handled. I had asked the Trustees to at a minimum provide more time for members to receive notification, vote and mail ballots. This request was denied. Members who received the second ballot in the mail thought they had already voted and assumed it was a mailing in error. Being reluctant to be seen as attempting to vote twice in the same election, they simply discarded the second ballot mailing."

67. Belio's July 16, 2021 email to Defendant further said in part: "My election complaint as submitted is clear. Simply turn each individual page front to back on the "CONDUCTING LOCAL UNION OFFICER ELECTIONS" and read the BLUE notation stating the violation. There are 78 BLUE notations in the "CONDUCTING LOCAL UNION OFFICER ELECTIONS" document which I am stating were violations which negatively impacted all candidates and the outcome of the election."

68. By letter dated and emailed July 22, 2021, Defendant's Executive Board Member Johnson informed Belio in part: "Your election complaint was heard by Local 18 Executive Board on July 17, 2021, and the challenge was unanimously denied. The

election will not be rerun. The statement of reason will follow."

69. Defendant's July 22, 2021 letter further informed Belio in part: "If you wish to appeal this decision, please review Article 6 section 1 of the International Constitution and bylaws."

70. On July 27, 2021, at approximately 1:39 p.m., Belio emailed IUEC General Secretary-Treasurer Larry McGann, saying in part: "Brother McGann, I am appealing the election decision by IUEC Local 18 Executive Board Committee. Please see attached."

71. By email dated July 27, 2021, at approximately 1:43 p.m., Belio emailed IUEC General Secretary-Treasurer McGann, saying: "Brother McGann, here is the additional election complaint issues. The blue highlighted notation in the document titled 'Conducting local union officer elections' are additional violation. Thank you[.]"

72. By letter dated August 2, 2021, Defendant's Executive Board Member Johnson informed Belio in part: "The Executive Board determined that your challenge largely consisted of a reproduction of non-binding suggestions published by the Department of Labor and statements that these suggestions were not followed. This was determined to be irrelevant. As for the balance of your challenge, the Executive Board found that even if the allegations were accurate, you failed to demonstrate that any of the events or conduct about which you complained plausibly may have affected the outcome of the election."

73. By letter dated August 10, 2021, IUEC General President Frank Christensen informed Belio in part: "What has been presented to us does not constitute an actionable appeal for our consideration. All you have done is mark up a United States Department of Labor document with the statement 'process not followed' in a variety of areas. You have cited no specific incidents that I can consider in evaluating whether there is cause to order the election to be rerun."

74. By letter dated August 30, 2021, IUEC General President Christensen informed Belio in part: "In response to your email of August 30, 2021, please be advised

1  that my determination that your election complaint fails to state a claim under the IUEC
2  Constitution and By-laws is a final determination. There is no right of appeal to the
3  General Executive Board regarding this decision."

4       75.      Having exhausted the remedies available and having received an August 10,
5  2021 final decision on his protest of the 2021 election, Belio timely filed his complaint
6  with the Secretary of Labor on September 4, 2021, within the one calendar month
7  required by section 402(a)(1) of the Act. 29 U.S.C. § 482(a)(1).

8       76.      By order of this court, the sixty-day limitations period in section 402(b) of
9  the Act, 29 U.S.C. § 482(b), was tolled as of September 17, 2021, pending Defendant's
10 compliance with Plaintiff's subpoena *duces tecum*. *Walsh v. IUEC 18*, Case No. 2:21-
11 mc-01080-GW-JEM (C.D. Cal. Oct. 22, 2021).

12       77.      By further order of this court, Defendant was ordered in part: "On
13 December 6, 2021, at 9:00 a.m. Pacific Time, Local 18 will produce original election
14 records requested by OLMS's administrative subpoena *duces tecum* to the physical
15 custody of OLMS and its agents at OLMS's Los Angeles District Office[.]" *Walsh v.*
16 *IUEC 18*, Case No. 2:21-mc-01080-GW-JEM (C.D. Cal. Dec. 1, 2021).

17       78.      By letter signed December 22, 2021, Defendant agreed that the time within
18 which Plaintiff may bring suit with respect to Defendant's aforesaid election be extended
19 to January 31, 2022.

20       79.      By letter signed January 6, 2022, Defendant agreed that the time within
21 which Plaintiff may bring suit with respect to Defendant's aforesaid election be extended
22 to February 16, 2022.

23       80.      By letter signed January 26, 2022, Defendant agreed that the time within
24 which Plaintiff may bring suit with respect to Defendant's aforesaid election be extended
25 to March 2, 2022.

26       81.      By letter signed February 23, 2022, Defendant agreed that the time within
27 which Plaintiff may bring suit with respect to Defendant's aforesaid election be extended
28 to March 16, 2022.

## COUNT 1

### For Violations of 29 U.S.C. § 481(c)

82. Paragraphs 1-81 are realleged and incorporated herein by reference.

83. Section 401(c) of the Act, 29 U.S.C. § 481(c), provides that "[a]dequate safeguards to insure a fair election shall be provided" by labor organizations in the conduct of their officer elections.

84. Defendant violated section 401(c) of the LMRDA, 29 U.S.C. § 481(c), during the conduct of its 2021 election when, eight days into the voting period, Defendant mailed members a second ballot package without sufficient voting instructions. For example, Defendant failed to provide clear, timely notice to members who had already voted the first, yellow ballot that they were required to vote the second, revised, lilac ballot in order to have their vote counted in the 2021 election.

85. In further violation of section 401(c), in the 2021 election, regarding the offices of business manager, trustee, and warden, for which Defendant listed the same candidates on both the yellow and lilac ballots, Defendant failed to count 135 voted first, yellow ballots from members who only voted a first, yellow ballot in the 2021 election.

86. The above violations of section 401(c) of the LMRDA, 29 U.S.C. § 481(c), may have affected the outcome of the 2021 election for the offices of business manager, trustee, warden and executive board members (3).

## COUNT 2

### For Violations of 29 U.S.C. § 481(e)

87. Paragraphs 1-86 are realleged and incorporated herein by reference.

88. Section 401(e) of the Act, 29 U.S.C. § 481(e), states that: "every member in good standing . . . shall have the right to vote[.]" 29 U.S.C. § 481(e).

89. Defendant violated section 401(e) of Act, 29 U.S.C. § 481(e), during the conduct of its 2021 election when, eight days into the voting period, Defendant mailed members a second ballot package without sufficient voting instructions. For example,

Defendant failed to provide clear, timely notice to members who had already voted the first, yellow ballot that they were required to vote the second, revised, lilac ballot in order to have their vote counted in the 2021 election.

90. In further violation of section 401(e), in the 2021 election, regarding the offices of business manager, trustee, and warden, for which Defendant listed the same candidates on both the yellow and lilac ballots, Defendant failed to count 135 voted first, yellow ballots from members who only voted a first, yellow ballot in the 2021 election.

91. The above violations of section 401(e) of the Act, 29 U.S.C. § 481(e), may have affected the outcome of the election for the offices of business manager, trustee, warden and executive board members (3).

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court enter judgment in favor of the Plaintiff and against Defendant as follows:

(a) declaring Defendant's election for the offices of business manager, trustee, warden and executive board members (3) to be void;

(b) directing Defendant to conduct a new election for the offices of business manager, trustee, warden and executive board members (3) under the supervision of Plaintiff;

(c) for the costs of this action; and

(d) for such other relief as may be appropriate.

Dated: March 16, 2022

TRACY L. WILKISON
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

  */s/ Jill S. Casselman*
JILL S. CASSELMAN
Assistant United States Attorney

Attorneys for Plaintiff Martin J. Walsh